ABRAHAM SHUMAN & others *vs.* GEORGE W. GILBERT.

Suffolk.　November 9, 1917. — January 8, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice,* Demurrer, Misjoinder. *Equity Jurisdiction,* To enjoin criminal prosecution. *Hawkers and Pedlers.*

In a suit in equity by six plaintiffs, each engaged in a different business, to enjoin an alleged anticipated unlawful interference with their business, the defendant demurred, assigning various causes of demurrer but not assigning as a cause of demurrer the improper joinder of the plaintiffs in a single suit, and the question of misjoinder of the plaintiffs was treated by this court as not open upon the demurrer.

A suit in equity cannot be maintained by one engaged in business to enjoin the chief of police of a city from committing an alleged apprehended unlawful interference with the plaintiff's business by instituting a complaint against the plaintiff for an alleged violation of R. L. c. 65, § 13, as amended by St. 1916, c. 242, § 1, in regard to hawkers and pedlers by exhibiting samples of his goods in a room hired by him in a hotel in that city without first obtaining a license.

The fact, that a person engaged in business may be injured in respect to his business by prosecution for an alleged crime, in conducting his business in an unlawful manner, is not a sufficient ground for a suit in equity by that person asking the court to ascertain in advance whether the business as conducted by him is in violation of a penal statute.

In the case in which the points above stated were decided, it was *said* that whether the plaintiffs, or any of them, were guilty of any infraction of the criminal law was a question to be tried in a criminal court and not in this suit in equity.

BILL IN EQUITY, filed in the Superior Court on April 16, 1917, and afterwards amended, by the members of a business firm and five business corporations against the chief of police of the city of Northampton, to enjoin the defendant from unlawfully interfering with the plaintiffs' business by arresting or prosecuting

them for exhibiting and selling by sample for future delivery. goods, wares and merchandise in the city of Northampton without a license in alleged violation of R. L. c. 65, § 13, as amended by St. 1916, c. 242, § 1.

The defendant's answer contained a demurrer as described in the opinion.

The case was heard by *Jenney,* J., upon the demurrer. He made an order that the bill be dismissed without costs. Later by order of the judge a final decree was entered that the demurrer to the bill as amended be sustained and that the bill be dismissed. The plaintiffs appealed.

*H. F. Wood,* (*A. Williams* with him,) for the plaintiffs.

*J. C. Hammond,* in the absence at the front in France of his son Captain T. J. Hammond, for the defendant.

RUGG, C. J. This is a suit in equity in which six plaintiffs join in alleging that they are merchants having permanent places of business, five of them in Boston and one in Springfield, and that occasionally at various times during the year they hire rooms in a hotel in Northampton and there display goods and merchandise as samples, making no sales from that stock but taking orders at retail for future delivery from their places of business in Boston or Springfield. The defendant is the chief of police of Northampton, who asserts that the plaintiffs have no right to conduct business in this manner without licenses, and threatens to institute complaints against them for violation of R. L. c. 65, § 13, as amended by St. 1916, c. 242, § 1, whereby hawking and peddling and the selling by itinerant vendors in general, with some exceptions, is prohibited. The prayers of the bill are that the defendant be forever enjoined from arresting their agents or otherwise interfering with the conduct of their business, and that the question whether they are violating the statute be determined. The defendant demurred upon several grounds. As he has not raised the point that the plaintiffs cannot join in such a suit, that is passed by. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 493.

The plaintiffs do not allege nor argue that the statute under which the defendant proposes to prosecute them is unconstitutional on any ground, nor that its enforcement as to them would be an unlawful interference with interstate commerce. Their

simple contention is that their conduct as set forth in their bill is not a violation of the statute rightly construed.

It is the general rule that the prosecution and punishment of crimes will not be restrained by a court of chancery. But there is an exception to this comprehensive statement. Jurisdiction in equity to restrain the institution of prosecutions under unconstitutional or void statutes or local ordinances has been upheld by this court when property rights would be injured irreparably, and when other elements necessary to support cognizance by equity are present. *Greene* v. *Mayor of Fitchburg*, 219 Mass. 121, 127. *Moneyweight Scale Co.* v. *McBride*, 199 Mass. 503, 505. The statement of the law in England has been made rather broadly that there is no jurisdiction in equity (at all events since the abolition of the court of the Star Chamber, which exercised a jurisdiction of so called criminal equity) to enjoin prosecution for crime. *Saull* v. *Browne*, L. R. 10 Ch. 64. *Kerr* v. *Preston Corp.* 6 Ch. D. 463, 466. See also *Grand Junction Waterworks Co.* v. *Hampton Urban Council*, [1898] 2 Ch. 331, 341; *Merrick* v. *Liverpool Corp.* [1910] 2 Ch. 449, 460–462. But there seems to be a caution about saying that circumstances may not arise authorizing a close approach to such jurisdiction. *Lord Aukland* v. *Westminster Local Board of Works*, L. R. 7 Ch. 597. *Burghes* v. *Attorney General*, [1911] 2 Ch. 139, 156–157. It was said in *Truax* v. *Raich*, 239 U. S. 33, at pages 37, 38: "It is also settled that while a court of equity, generally speaking, has 'no jurisdiction over the prosecution, the punishment or the pardon of crimes or misdemeanors' (*In re Sawyer*, 124 U. S. 200, 210) a distinction obtains, and equitable jurisdiction exists to restrain criminal prosecutions under unconstitutional enactments, when the prevention of such prosecutions is essential to the safeguarding of rights of property." *Philadelphia Co.* v. *Stimson*, 223 U. S. 605, 621. That is the law of this Commonwealth. Doubtless that principle is generally recognized by the courts of this country. It has been applied to the institution of proceedings under statutes and ordinances, the enforcement of which would result in unlawful deprivation of the right to labor, *Truax* v. *Raich*, 239 U. S. 33, the illegal interference with the right to transact interstate commerce free from burdensome state restrictions, *Western Union Telegraph Co.* v. *Andrews*, 216 U. S. 165, *Lee's Summit* v. *Jewel*

*Tea Co.* 133 C. C. A. 637; 217 Fed. Rep. 965, *Herndon* v. *Chicago, Rock Island & Pacific Railway,* 218 U. S. 135, *Jewel Tea Co.* v. *Carthage,* 257 Mo. 383, 391, the confiscation of property or property rights, *Dobbins* v. *Los Angeles,* 195 U. S. 223, 241, *Home Telephone & Telegraph Co.* v. *Los Angeles,* 227 U. S. 278, 293, the denial of due process of law, *Hopkins* v. *Clemson Agricultural College of South Carolina,* 221 U. S. 636, and the denial of the equal protection of the laws, *Ex parte Young,* 209 U. S. 123, 146, 147.

The jurisdiction in chancery thus recognized and exercised rests upon the fundamental and well established equitable doctrine that private personal and property rights will be protected by injunction from threatened irreparable unlawful injury. The injunction against the institution of criminal proceedings is simply incidental to that main ground of equitable jurisdiction. Where the facts are such as to call for the exercise of the powers of a court of chancery according to its established principles, the mere fact that, in order to grant the remedy afforded by equity, it may be necessary as a subsidiary step to enjoin the institution of criminal proceeding or even the commission of a crime, is no bar to the jurisdiction of equity. That this is the underlying principle is manifest from an examination not only of the cases above cited but of most other cases where the injunction has been granted or jurisdiction assumed.* This is but another way of stating the principle that, while as a general rule equity will not interfere by injunction with the prosecution of crimes, there is an exception where such prosecutions are founded on unconstitutional or void enactments and will result in immediate injury to property or property rights.

Some courts of equity have taken jurisdiction of causes on the ground of prevention of multiplicity of prosecutions, sometimes in combination with the circumstance that there was no relief by appeal. *Franklin* v. *Lacey,* 157 Ky. 261, 263. *Martin* v. *Baldy,* 249 Penn. St. 253, 258. It is possible that *Huntworth* v.

---

*Mobile* v. *Orr,* 181 Ala. 308. *Abbey Land & Improvement Co.* v. *San Mateo,* 167 Cal. 434. *Southern Express Co.* v. *Ty Ty,* 141 Ga. 421. *Brown* v. *Abilene,* 93 Kans. 737. *Clark* v. *Hartford Agricultural & Breeders' Association,* 118 Md. 608, 615. *Michigan Salt Works* v. *Baird,* 173 Mich. 655. *Ideal Tea Co.* v. *Salem,* 77 Ore. 182. *Weyman-Bruton Co.* v. *Ladd,* 146 C. C. A. 94, (231 Fed. Rep. 898).

*Tanner,* 87 Wash. 670, may stand on some such ground, although the discussion in that opinion goes much further than that in any other case of which we are aware. Other courts have taken jurisdiction because there was arbitrary, oppressive and revengeful conduct amounting to a settled malicious purpose to cause irreparable damage to the property rights or personal liberty of the complainant by numerous or successive prosecutions. *Cutsinger* v. *Atlanta,* 142 Ga. 555, 573, 574. *Alexander* v. *Elkins,* 132 Tenn. 663. *Baldwin* v. *Atlanta,* 147 Ga. 28. Without pausing to discuss or to consider the soundness of those principles, it is enough to say that there are no allegations to bring the case at bar within them. A possibility that complaints may be lodged against six persons is not enough under these circumstances to make out a case of multiplicity. The allegations as to repeated complaints are not sufficient to warrant the inference that the courts of this Commonwealth will countenance continued and oppressive prosecutions when once a genuine test case open to fair question has been presented and is on its way to final decision.

The allegation of the bill in the case at bar is, that to determine the question whether they "come within the purview of the statutes" as contended by the defendant, "will take several months before a decision relative thereto can be had from the Supreme Court; that the said defendant has stated that he will arrest and prevent the plaintiffs from exhibiting as aforesaid in said city of Northampton, even during the time a test case is awaiting a decision by the Supreme Court, unless the plaintiffs are duly licensed forthwith by the said commissioner of weights and measures either as itinerant vendors or as hawkers and pedlers; that by reason of the defendant's threats and arbitrary attitude relative thereto, the plaintiffs would be prevented from carrying on their usual business as aforesaid in said city of Northampton while the said question would be pending before the Supreme Court; and that the plaintiffs would thereby sustain irreparable damage in that the seasons for exhibitions and sales by sample for future delivery as advertised will have passed, in that the profits therefrom would be wholly lost and in that the plaintiffs would be compelled at considerable expense to cancel reservations of accommodations heretofore made in said

city of Northampton, and would otherwise be greatly damaged."
These allegations are to a considerable extent respecting the course
of law and proceedings in court in this Commonwealth, and
hence are not admitted by the demurrer. It assumes that one
innocent of·any infraction of the law will be found guilty by the
district court and by the Superior Court, a presumption which as
matter of law cannot be indulged, at least upon such general
allegations.

The allegations as to property are nothing more than the ordi-
nary averments which might be made by anybody engaged in
business, undertaking a branch of commercial adventure believed
by the officers charged with enforcing the law to be in contra-
vention of some penal statute confessedly valid in itself. Simply
that one is in business and may be injured in respect of his business
by prosecution for an alleged crime, is no sufficient reason for
asking a court of equity to ascertain in advance whether the busi-
ness as conducted is in violation of a penal statute.

The conclusion is that the allegations of the bill do not make
out a cause for equitable relief, but fall within the general principle
that courts of equity will not enjoin the institution of proceedings
to punish alleged crimes. While there is some diversity in the
application of the governing principles, this result appears to be
in harmony with most of the decisions already cited and is
supported by the great weight of authority.*

Whether the plaintiffs or any of them are guilty of any infraction
of the criminal law is a question to be tried in a criminal court
and not in this proceeding.

*Decree dismissing bill affirmed with costs.*

---

* *Delaney* v. *Flood*, 183 N. Y. 323. *Sennette* v. *Police Jury of St.
Mary's Parish*, 129 La. 728. *Snouffer & Ford* v. *Tipton*, 161 Iowa, 223.
*Kleinke* v. *Oates*, 187 Mich. 548. *Milton Dairy Co.* v. *Great Northern Rail-
way*, 124 Minn. 239. *Southern Express Co.* v. *High Point*, 167 N. C. 103.
*Board of Supervisors* v. *Owen*, 100 Miss. 462. *Turner* v. *Ardmore*, 41 Okla.
660. *Sherod* v. *Aitchison*, 71 Ore. 446. *Bisbee* v. *Arizona Ins. Agency*, 14
Ariz. 313. *Brunstein* v. *Fort Collins*, 53 Col. 254. *Hoffman* v. *Tooele*, 42
Utah, 353. See cases collected in L. R. A. 1916 C, note, pages 263 to 273.