45 Mass. App. Ct. 283 (1998)                                     283

Boulter Brothers Construction Company, Inc. *v.* Zoning Board of Appeals of Norfolk.

BOULTER BROTHERS CONSTRUCTION COMPANY, INC. *vs.*
ZONING BOARD OF APPEALS OF NORFOLK.

No. 97-P-997.

Norfolk. June 4, 1998. - August 5, 1998.

Present: LENK, GILLERMAN, & SMITH, JJ.

*Zoning,* Split lots, Lot size, Building permit. *Words,* "Lot."

In an appeal under G. L. c. 40A, § 17, from a zoning board's denial of a building permit, a Superior Court judge correctly concluded that a split lot located in two towns was entitled to the grandfathering protection of G. L. c. 40A, § 6, from a zoning by-law amendment of one of the towns explicitly requiring that town's portion of a split lot to meet all zoning requirements including lot size; consequently, the portion of the lot outside the borders of the town was properly includable in the calculation of lot size and the lot thus met all the requirements for a buildable lot. [284-287]

CIVIL ACTION commenced in the Superior Court Department on December 23, 1994.

The case was heard by *Gordon L. Doerfer,* J.

*Paul D. Maggioni* for the defendant.

*Joseph L. Mitchell, Jr.,* for the plaintiff.

LENK, J. The locus at issue is shown as an approximately five-acre lot on a 1984 recorded plan of land in Millis and Norfolk. Of the total area, 33,401 square feet are in Norfolk and 4.2 acres are in neighboring Millis. This split lot is located in two zoning districts, but the record informs us only as to the Norfolk zoning by-law which is the subject in dispute here. The lot is located in Norfolk's R-3 district, which requires, among other things, 55,000 square feet of land for a lot to be buildable. The lot has the requisite amount of land if the land in both Millis and Norfolk is included in the lot size calculation, but is deficient if only the Norfolk portion of the lot is considered.

The defendant board is of the view that its zoning by-law at all relevant times required 55,000 square feet of land located

within the borders of Norfolk to satisfy the R-3 lot size require-
ment for a buildable lot. Although § E.1.b of the Norfolk by-
law at all times required 55,000 square feet in an R-3 district, it
was not until a November 22, 1993, amendment that the by-law
explicitly required the Norfolk portion of a split lot to meet all
zoning requirements, including lot size requirements. The board,
however, asserts that even prior to the amendment the by-law
so required and the board so interpreted it. Accordingly, the
board denied the prior owner[1] a variance in 1984 and 1985, and
in 1994 denied Boulter Brothers Construction Company
(Boulter) a building permit, which Boulter sought as of right,
on the ground that the lot does not conform to the by-law lot
size requirement. Boulter appealed from that denial to the
Superior Court under G. L. c. 40A, § 17, where it prevailed on
its contention that, with the grandfathering protection accorded
by G. L. c. 40A, § 6, it met the lot size requirement and was
entitled to a building permit. The matter is before us on the
board's appeal from the Superior Court judgment annulling the
board's decision and ordering the grant of a building permit
with respect to lot size requirements.

The board claims two errors on appeal. First, it asserts that
the trial judge erred in ruling that, prior to the November, 1993,
by-law amendment, the Norfolk by-law permitted land located
outside of Norfolk to be included in the lot size calculation.
Second, the board claims that the trial judge erred in ruling that
the subject lot was grandfathered under G. L. c. 40A, § 6.

The Norfolk by-law prior to the 1993 amendment was silent
on the question of whether land outside the borders of Norfolk
could be included in the calculation of dimensional require-
ments. Nothing in the record on appeal suggests otherwise.[2] The
board's own interpretation of the by-law in this regard, however

---

[1]After E.S. Dmytryck & Sons, the former owner, defaulted on its mortgage,
The Ben Franklin Savings Bank acquired title by foreclosure deed to the lot
on May 6, 1992. Prior to defaulting, Dmytryck was denied a building permit
because of insufficient lot size and appealed from the denial to the board. The
board denied the appeal, and Dmytryck filed an appeal with the Superior
Court but failed to prosecute it, and the appeal was dismissed in 1993. Boulter
is not the owner of the lot, but no issue is raised as to its standing.

[2]The record before us contains only small portions of the Norfolk zoning
by-law, specifically §§ A.1 through A.4 and §§ E.1 through E.1.c.5 of the by-
law as of February, 1990, and §§ D.1.a through D.1.d and §§ E.1.a through
E.1.c.4 of the by-law as amended through November 22, 1993. The zoning
by-law of Millis has not been included at all, but the board does not suggest

consistent it may have been over time, is not dispositive. We think, with the trial judge, that the Norfolk by-law, prior to the 1993 amendment, cannot fairly be construed as having prohibited the inclusion of land outside Norfolk's borders in the calculation of dimensional requirements.

We observe, first, that it has been clear since at least 1988 that the use of land in another zoning district, albeit in another municipality, solely to meet dimensional requirements is considered a permissible abstract or passive use where, as here, it appears both zoning districts permit the proposed active use, i.e., single family residential. *Tofias* v. *Butler*, 26 Mass. App. Ct. 89 (1988); *Moore* v. *Swampscott*, 26 Mass. App. Ct. 1008 (1988). Lot size requirements are no less dimensional requirements than are frontage requirements, as in *Tofias, supra*. This does not in any way interfere with a municipality's right to carry out its zoning policies with respect to actual, active uses made of land within its borders. Compare *Brookline* v. *Co-Ray Realty Co.*, 326 Mass. 206 (1950) (Brookline portion of split lot to be used for active purpose of service entrance for apartment building on Boston portion of lot violative of Brookline by-law proscribing such use may not be included in dimensional computation); *Beale* v. *Planning Bd. of Rockland*, 423 Mass. 690, 694 (1996); *Dupont* v. *Dracut*, 41 Mass. App. Ct. 293, 295-296 (1996). See Bobrowski, Massachusetts Land Use and Planning Law § 12.7.4 (1993 & Supp. 1997). Second, the judge found that, in the by-law prior to the 1993 amendment, a lot was defined as "a parcel of land occupied or intended to be occupied by one building or use," and that the by-law excluded from the definition of a "lot" those areas "within the boundaries of a street, accepted, proposed or dedicated." Significantly, the by-law's definition of "lot" does not also exclude land located outside the boundaries of Norfolk. As in *Becket* v. *Building Inspector of Marblehead*, 6 Mass. App. Ct. 96, 102 (1978), the failure to exclude land lying outside Norfolk from the definition of "lot," when other land (within the boundaries of a street) is

that Millis in any way objects to the proposed residential use of the lot. To the extent that the board would have us construe the disputed portion of the by-law in the context of the Norfolk zoning by-law in its entirety, it bore the burden of compiling a record appendix sufficient for the purpose. Mass.R.A.P. 18(a), as amended, 425 Mass. 1602 (1997). *Shawmut Community Bank, N.A.* v. *Zagami*, 411 Mass. 807, 811 (1992). We do not take judicial notice of zoning by-laws. *Ploski* v. *Zoning Board of Appeals of Somerset*, 7 Mass. App. Ct. 874, 875 (1979).

explicitly excluded, is significant in construing what land the by-law permits to be considered in determining lot size. Third, we agree with the trial judge that "[t]his conclusion is further bolstered by Norfolk's adoption of explicit language excluding area falling outside of the borders of Norfolk in determining a lot's area in November, 1993." Accordingly we discern no error in the judge's ruling that the subject lot conformed to existing zoning prior to the effective date of the restrictive November, 1993, by-law amendment.

The board's second contention, that it was error to rule that the lot was grandfathered under G. L. c. 40A, § 6, is equally unavailing.[3] The board argues that the lot was nonconforming and was not in separate ownership from adjoining land and thus does not satisfy two of the four criteria for grandfathering protection. We note as an initial matter that, although the board insists that this is a variance case, the board has no basis for its position. Boulter sought a building permit because it claimed that it complied with existing zoning prior to the 1993 amendment. Unlike the prior owner, which apparently capitulated to the board's interpretation of the pre-1993 by-law (i.e., only land in Norfolk can be counted to meet the lot size requirement) and sought a variance because it could not "comply" with the 55,000 square feet requirement, Boulter quite properly sought a building permit as of right. The board's reasoning that the lot did not conform to the 55,000 square foot requirement prior to 1993 and is hence not entitled to G. L. c. 40A, § 6, grandfathering protection is circular because it depends on the flawed premise that the Millis portion of the lot could not be included in the lot size calculation, a premise we have rejected.

The only other basis for the board's claim that the grandfathering protection of G. L. c. 40A, § 6, does not apply to the subject lot is that Boulter failed to show that in 1984 the lot was not in common ownership with adjoining land. There·is nothing to this argument. The deed or plan creating the subject lot in 1984 is not controlling. A lot benefits from G. L. c. 40A, § 6, protection when the most recent instrument of record prior

---

[3]General Laws c. 40A, § 6, as inserted by St. 1975, c. 808, § 3, provides in pertinent part that "[a]ny increase in area . . . requirements of a zoning . . . by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage."

to the restrictive zoning change shows that the lot was separately owned, even if previous instruments show it had been held in common with adjoining land. *Adamowicz* v. *Ipswich*, 395 Mass. 757 (1985). Here, the most recent instrument of record prior to the 1993 restrictive by-law change was a 1992 foreclosure deed in which the bank acquired title to the subject lot, demonstrating that the lot was not held in common ownership with any adjoining land.

The locus also satisfies the remaining requirements of G. L. c. 40A, § 6, in that it contains at least 5,000 square feet of space and fifty feet of frontage. There was no error in the judge's determination that G. L. c. 40A, § 6, applies and that the locus is exempt from Norfolk's November, 1993, restrictive by-law change.[4]

*Judgment affirmed.*

---

[4]For the purposes of this decision, we need not decide whether the 1993 amendment was valid.